**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **LEWIS A. HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 5:14-cv-00062** |
| | ) | |
| **v.** | ) | |
| | ) | **By:   Michael F. Urbanski** |
| **KENNETH J. NESTMAN, et al.,** | ) | **United States District Judge** |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court following protracted efforts by the parties to ascertain the

citizenship of defendant Jalanda Y. Brown and determine whether the court has diversity jurisdiction

over this case pursuant to 28 U.S.C. § 1332. Currently pending on the docket are plaintiff Lewis A.

Hall's motion to remand (Dkt. # 5), supplemental motion to remand (Dkt. # 20) and motion to

amend the complaint (Dkt. # 21) to allege that Brown is a citizen of North Carolina for

jurisdictional purposes. For the reasons set forth below, each of these motions will be **DENIED**

and this case will be set down for further proceedings.

## I.

This action arises out of an automobile accident that occurred on November 25, 2012 in

Shenandoah County. Hall filed suit in state court in October 2014[1] against defendants Kenneth J.

Nestman, Jalanda Y. Brown, Rebecca E. Myron and Susan Myron. See Compl., Dkt. # 1-1.

Nestman removed the case to federal court on December 1, 2014, asserting the court has diversity

jurisdiction over this matter based on the allegations in the complaint that plaintiff is a citizen of

---

[1] There appears to be some dispute as to when the complaint was filed in state court. Hall asserts he filed his complaint
on October 17, 2014. See Pl.'s Mem. in Support of Mot. to Remand, Dkt. # 7, at 1; see also Dkt. # 1-1. Nestman
argues, and the state court's docket appears to reflect, that the case was filed on October 23, 2014. See Nestman's Br. in
Opp. to Remand, Dkt. # 8, at 1; Nestman's Resp. in Opp. to Supp. Mot. to Remand, Dkt. # 22-1. It is enough for
purposes of this analysis to know simply that the complaint was filed in October 2014.

North Carolina, defendants Nestman and Myron are citizens of New Jersey, and defendant Brown is a citizen of Pennsylvania. See Not. of Removal, Dkt. # 1, at ¶¶ 2, 3. Hall moved to remand pursuant to 28 U.S.C. § 1447(c), arguing defendant Brown had not consented to removal. Nestman opposed the motion, asserting Brown was not a properly served defendant and thus her consent to removal was not required. A hearing was scheduled for January 21, 2015. Prior to the hearing, counsel for Brown entered an appearance on the docket and filed an answer to the complaint and a notice of consent to removal to federal court. Based on these filings and representations made at the January 21st hearing, a question was raised as to the proper citizenship of Brown—specifically, whether she is a citizen of North Carolina, rather than of Pennsylvania, which would destroy diversity and leave the court without subject matter jurisdiction over this action. At plaintiff's request, the court gave the parties thirty days to sort out these issues and supplement their briefs.

On February 20, 2015, Hall filed a supplemental motion to remand as well as a motion to amend the complaint to allege that Brown is a North Carolina citizen. Hall submitted various affidavits, Department of Motor Vehicle records and voter registration information suggesting Brown maintained North Carolina citizenship for jurisdictional purposes. Nestman again opposed Hall's request for remand, arguing Hall's evidence was insufficient to establish that Brown was a citizen of North Carolina at the time the complaint was filed. The court held a second hearing on April 24, 2015, at which time it took the pending motions under advisement and ordered Nestman to arrange for and take the deposition of defendant Brown, limited in scope to the issue of her citizenship. See Dkt. # 25.

Brown was deposed on May 21, 2015. She testified that her mother has lived in Pennsylvania for "[a] long time" – more than five years. Brown Dep., Dkt. # 32-1, at 23. Brown herself lived in Pennsylvania and was issued a Pennsylvania driver's license in March 2011. Id. at 19, 22. At some point thereafter, she moved to North Carolina, and, at the time of the accident giving

rise to this litigation, in November 2012, she was living in North Carolina.[2]  However, she was frequently traveling back and forth to Pennsylvania to care for her ailing mother.  Id. at 21-22, 24.  Brown stated that she had hoped to move her parents down to North Carolina with her eventually.  Id. at 26.  But "[t]hey never left.  They're still here [in Pennsylvania]."  Id. at 26.  Brown testified she was issued a North Carolina driver's license but does not currently have it in her possession.  Id. at 19-20.  And by virtue of that driver's license application, she is registered to vote in North Carolina.  Id. at 63-64.

Brown testified that when she first moved to North Carolina, she worked for Actuarial Management Resources and lived in an apartment on Carriage Drive in Winston-Salem for about eight months.  Id. at 27, 29.  She then worked for United Healthcare in Greensboro, and lived in an apartment on Zuider Zee Court in Winston-Salem,[3] until August 2014.  Id. at 30, 42-43; see also Aff. of Vickie Roberts, Dkt. # 20-1, at ¶ 2.  At that point, she moved in with her cousin in an apartment on Legacy Park Drive in Winston-Salem for "a month or less," Brown Dep., Dkt. # 32-1, at 44-46, before leaving for Georgia to be with her sick brother, id. at 30; see also id. at 14, 17.  Brown testified that she spent only one month in Georgia, id. at 46, and that her move there was never intended to be a permanent one, id. at 42.  She stayed with a friend whom she only knew by his nickname, "Sunshine," id. at 14, and claimed to have no residence at the time, id. at 18.  While in Georgia, she worked for a month or less with a company that assisted flight attendants and pilots.  Id. at 31, 60.  As for her intentions after leaving Georgia, Brown testified:  "I wasn't for sure if I was going to go back to North Carolina or my parents, because it depended on my parents' condition.

---

[2] The accident report lists a Pennsylvania address for Brown.  See Fitzgerald Aff., Dkt. # 6, at Ex. C.  Brown testified, however, that she was living in North Carolina—not Pennsylvania—at the time of the accident.  Brown Dep., Dkt. # 32-1, at 23-24.

[3] Brown testified she may have stayed in a few other places with friends between the time she left the Carriage Drive apartment and the time she took up residence on Zuider Zee Court.  Id. at 54-55

3

They were sickly." <u>Id.</u> at 42.  She did not have an apartment in North Carolina to which she could

return.  <u>Id.</u>  Brown had her mail forwarded to her cousin's Legacy Park Drive address.  <u>Id.</u> at 52.[4]

Brown ended up going to Pennsylvania after leaving Georgia and has resided there

continuously since.  <u>Id.</u> at 46-47.  Although she could not remember the exact date, Brown was

certain she had left Georgia for Pennsylvania well before the Thanksgiving holiday in 2014.  <u>Id.</u> at

51-52.  She currently resides with her mother in Sinking Spring, Pennsylvania, <u>id.</u> at 10, 22, and

carries in her possession her Pennsylvania driver's license, <u>id.</u> at 19.  With respect to her intent to

remain there, Brown was asked:

> Q.  Are you ever contemplating perhaps coming to North Carolina?
>
> A.  I wanted [my mother] to because this weather's really not good.
> But my mom's condition has worsened.  She's not really fit to travel
> now.  I don't know what I'm going to have to do at this point.
>
> Q.  And I'm not trying to put words in your mouth, but you would
> say at this point in your life do you know whether you're [more] likely
> to stay in Pennsylvania or more likely to come back to North
> Carolina?
>
> A.  I want to come back to North Carolina, but I don't know.  Me
> and my sister we're trying to work out to see what we're going to do
> with our parents at this time.  We're not for sure.  You know, it's
> getting to the point that we might not be able to continue to help
> them because right now I'm kind of like the person that helps my
> mom, my dad, and my sister.  So it all depends on how ---.  If their
> condition doesn't go --- if it's slower, then I'll be up here for a
> minute.  But if it progresses, I might have to think of something else.
> I'm not for sure.  I don't know.
>
> Q.  And if you think of something else, would that something else
> likely be North Carolina?
>
> A.  Well, it would probably be like ---.  If I'd have to put her in
> assisted living or something of that nature ---.  If it was up to me, I
> would ----.  If I could, I would bring her down to the south.  But her
> body can't take long periods of being in the car.  She can't even go to

---

[4] Brown testified her cousin no longer lives at this address and had moved in with his sister.  <u>Id.</u> at 44.  She does not know where they now reside.  <u>Id.</u> at 44-45.

4

the grocery store and – you know, right at this point. So I don't
know.

Id. at 61-62. Brown stated she does currently have some household belongings in a storage facility
in North Carolina. Id. at 20, 25, 33-34, 62-63.

Both Nestman and Hall have filed status reports based on the evidence elicited during this
deposition. No party has filed a supplemental brief, nor does the court find further briefing or
argument to be necessary. There is sufficient evidence for the court to make a determination as to
Brown's citizenship for purposes of diversity jurisdiction.

## II.

An action lies within the diversity jurisdiction of the federal court when the matter in
controversy exceeds the sum of $75,000 and is between citizens of different states. 28 U.S.C. §
1332. "From the beginning of the diversity jurisdiction, the rule in actions commenced by plaintiffs
in federal court has been that the citizenship of the parties at the time of commencement of the
action determines whether the requisite diversity exists." Rowland v. Patterson, 882 F.2d 97, 98 (4th
Cir. 1989). However, "[i]n the removal context, federal courts are split as to what is the critical point
for determining the existence of diversity jurisdiction. The majority of decisions typically require
complete diversity to exist at the time the removal petition is filed." 13E Wright, et al., Fed. Prac. &
Proc. Juris. § 3608 (3d ed. 2015); see also id. at § 3612. Indeed, courts in the Fourth Circuit look to
both when a case was removed, as well as when the complaint was originally filed in state court, as
the operative dates for determining citizenship for jurisdictional purposes. See Rowland v.
Patterson, 882 F.2d 97, 99 (4th Cir. 1989) ("[T]o support diversity jurisdiction in removed cases,
diversity must have existed both at the time the action was original commenced in state court and at
the time of filing the petition for removal."); Sayers v. Sears, Roebuck and Co., 732 F. Supp. 654,
656 (W.D. Va. 1990) ("The jurisdictional requirements for diversity jurisdiction are not present if
they are not met at both the time of commencement and the time of removal."); see also Burgess v.

5

Gateway Commc'ns, Inc.-WOWK TV, 984 F. Supp. 980, 982 (S.D. W.Va. 1997); id. at 982 n.4 (citing 14A Wright, Miller & Cooper, Federal Practice & Procedure § 3723 (2d ed. 1985)); Heniford v. Am. Motors Sales Corp., 471 F. Supp. 328, 334 (D.S.C. 1979); cf. Hatcher v. Lowe's Home Centers, Inc., 718 F. Supp. 2d 684, 686 (E.D. Va. 2010) ("[A]s a general rule, the amount in controversy in an action that is removed because of diversity of citizenship should be measured 'at both the time of commencement [of the action in state court] and the time of removal.'" (quoting Sayers, 732 F. Supp. at 656) (alteration in Hatcher)). "The burden for establishing whether the statutory and jurisdictional requirements for removal have been met is on the defendant." Rogers v. Dow Agrosciences, LLC, No. 4:06CV00015, 2006 WL 2060029, at *2 (W.D. Va. July 21, 2006) (citing Mulcahey v. Columbia Organic Chem. Co., Inc., 29 F.3d 148 (4th Cir. 1994)).

Having carefully considered the evidence, the court finds that Nestman has met his burden of proving the court has diversity jurisdiction over this matter. Although Brown cannot recall dates with any specificity, it appears from piecing together the evidence that she was physically present in Georgia when the complaint was filed in October 2014. See Brown Dep., Dkt. # 32-1, at 47. Mere residency, however, is insufficient to establish citizenship for purposes of diversity jurisdiction. Johnson v. Advance Am., 549 F.3d 932, 937 n.2 (4th Cir. 2008) (citing Axel Johnson, Inc. v. Carroll Carolina Oil Co., 145 F.3d 660, 663 (4th Cir. 1998)). Indeed, domicile requires physical presence coupled with an intent to remain. Id.

> It very often has been said by federal judges in a tremendous number of judicial opinions that the domicile of a party to a diversity of citizenship case is the place where that individual has a true, fixed home and principal establishment, and to which, whenever that person is absent from the jurisdiction, he or she has the intention of returning. . . . Domicile, therefore, has both a physical and a mental dimension and is more than an individual's residence, although the two typically coincide. There are, however, certain classes of litigants who do not reside where they are domiciled but nonetheless maintain their domiciles despite protracted periods of residence elsewhere. . . .

6

13E Wright, et al., supra, at § 3612. Nevertheless, case law makes clear that "a person has only one domicile for diversity purposes at a particular time, even though he or she may have several residences in different states." Id. Given Brown's lack of intent to remain in Georgia, and the fact that she resided there for no more than a month, Brown cannot be considered a Georgia citizen, despite her physical presence in that state at the time the complaint was filed.

The question, then, is whether Brown should be considered a domiciliary of North Carolina or of Pennsylvania for purposes of diversity jurisdiction in this case.

> In determining a person's domicile, courts may consider factors such as: "the person's declarations, place of business, payment of taxes, house of residence, driver's license and automobile registration and title, ownership of real and personal property, telephone number and listing, payment for utilities, receipt of mail, and exercise of political rights or satisfaction of the domicile's requirements to register to vote." While no one factor is determinative, some factors carry more weight than others. For instance, the state in which an individual is registered to vote raises a presumption that the individual is a citizen of that state, and "the presumption must be rebutted by evidence showing a clear intention that his citizenship is otherwise." Further, a mere change in residence by itself is insufficient to alter one's domicile or citizenship. To effect a change in domicile, an individual "must take up residence in a different domicile with the intent to remain there."

Brooks v. Shope, No. 3:09-CV-334-W, 2010 WL 2176073, at *2 (W.D.N.C. May 21, 2010) (internal citations omitted), aff'd, 430 F. App'x 220 (4th Cir. 2011); see also 13E Wright, et al., supra, at § 3612.

Brown resided in North Carolina for the two years preceding her brief stay in Georgia. See Brown Dep., Dkt. # 32-1, at 21. While there, she maintained an apartment, a job, id. at 27-30, 42-44, a driver's license, and a voter registration, id. at 63-64; see also Hall's Supp. Mot. to Remand, Dkt. # 20-4. Nevertheless, while living in North Carolina, Brown frequently traveled back and forth to Pennsylvania, "[b]ecause [she] was still kind of still living here [in Pennsylvania] a little bit," and assisted in caring for her ailing mother. Brown Dep., Dkt. # 32-1, at 21-22.

7

Brown left North Carolina for Georgia in approximately September 2014 to be with her sick brother. Id. at 41-42. Brown testified that, at the time, she had no intent to remain in Georgia but did not know if she would be returning to North Carolina or going to Pennsylvania, as it depended on her parents' health condition. Id. at 42. However, Brown appears to have all but severed connections with North Carolina when she left— she did not have a lease on an apartment or other residence in North Carolina to which she intended to return, nor did she have employment waiting, as she had left her job with United Healthcare a month prior to her departure for Georgia. Id. at 30, 42. In fact, Brown did not ever return to North Carolina. She moved back to Pennsylvania to be with her parents after spending a month or less in Georgia, and she has lived in Pennsylvania continuously since.[5] Id. at 46, 47.

Given the specific circumstances presented in this case, and considering the evidence in its entirety, the court finds Brown to be a domiciliary of Pennsylvania for jurisdictional purposes. See Frye v. Southern Lithoplate, Inc., No. 3:13-CV-63, 2013 WL 6246780, at *3 (N.D. W.Va. Dec. 3, 2013) ("Courts determine domicile on a case by case basis, considering all of the circumstances surrounding an individual's situation." (citing 13E Wright et al., supra, at § 3612)). Brown was physically present in Pennsylvania at the time this case was removed to federal court and the jurisdiction of the court was invoked. Brown has lived in Pennsylvania at her mother's house continuously since that time and has no definite plans to go elsewhere.[6] Her family, including her ailing mother, resides in Pennsylvania and has for some time. Importantly, Brown herself previously

---

[5] Records from the North Carolina Division of Motor Vehicles filed by Hall as Exhibit B to his supplemental motion to remand show Brown living at the Carriage Drive address in Winston-Salem through November 19, 2014 and at the Legacy Park Drive address in Winston-Salem from November 19, 2014 to the present. See Dkt. # 20-2. In her deposition, Brown explained this information is incorrect, as she knows she was in Pennsylvania before Thanksgiving in 2014. Id. at 51-52.

[6] Brown testified she hopes to one day return to North Carolina but it depends on her parents' health situation. "The fact that there may be some floating intention of moving elsewhere later, or even of returning to the old domicile, does not prevent a new domicile being acquired in the meantime." See Granite Trading Corp. v. Harris, 80 F.2d 174, 176 (4th Cir. 1935); 13E Wright et al., supra, at § 3613 ("A so-called 'floating intention' or vague possibility to move on or even to return to a former domicile at some undetermined future time will not defeat the acquisition of a new domicile for diversity jurisdiction purposes if the intent to remain at the new domicile seems genuine to the court.").

8

lived in Pennsylvania. She was issued a Pennsylvania driver's license in 2011, which she still possesses and carries with her. And Brown maintained a continuing nexus with Pennsylvania even while residing in North Carolina for two years between the fall of 2012 and the fall of 2014.[7] Thus the evidence establishes that Brown is a citizen of Pennsylvania for diversity purposes in this case. As there is complete diversity between the parties, the court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

### III.

Accordingly, Hall's motion to remand (Dkt. # 5), supplemental motion to remand (Dkt. # 20) and motion to amend the complaint (Dkt. # 21) will be **DENIED**.

An appropriate Order will be entered.

Entered:  June 29, 2015

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

[7] The outcome of this analysis might be different if Brown had no previous connection to Pennsylvania. See, e.g., Niell v. Salisbury Sch., Inc., No. ELH-11-3627, 2012 WL 34021, at *5 (D. Md. Jan. 5, 2012) ("Just as residence, standing alone, is insufficient to establish domicile, so too a person cannot be a domiciliary of a state where he merely has an intention to reside in the future, without ever actually having made his home there.").

9